UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

        -against-                                              05 Crim. 1157 (LAK)

RAHEEN DAVIS,

                          Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

                Katherine A. Lemire
                John M. Hillebrecht
                Assistant United States Attorneys
                MICHAEL J. GARCIA
                UNITED STATES ATTORNEY

                Mitchell Dinnerstein
                *Attorney for Defendant*

LEWIS A. KAPLAN, *District Judge.*

        The use of physical restraints on a criminal defendant during a trial is serious business. In some circumstances, it could interfere with the defendant's ability to participate in the defense and compromise the "courtroom's formal dignity."[1] Moreover, it could undermine the

---

[1] *Deck v. Missouri*, 544 U.S. 622, 629 (2005).

presumption of innocence if it came to the attention of the jury.[2] Nevertheless, there are rare cases in which the risks inherent in allowing a potentially violent defendant to retain freedom of movement in the courtroom overcome these concerns.

In this case, the defendant is charged with an especially violent murder. He is awaiting trial on another indictment that charges him with attempted murder of a prison guard – an event captured on video – that he allegedly committed while awaiting trial in this case. He allegedly has threatened witnesses and engaged in other conduct that suggests a predisposition to violence. He on occasion has refused to come to court voluntarily for pretrial proceedings. The Court therefore granted the government's motion to physically restrain the defendant during trial, albeit in a manner that should not be perceptible by the jury. This memorandum opinion sets out the Court's finding and reasoning in doing so.

*Background*

*The King Murder*

On January 19, 2005, three men entered Henry King's apartment. One – allegedly defendant Davis – fired approximately 30 bullets, killing King and injuring two others.[3] Davis and the others then allegedly went to Rigoberto Ramos's apartment, where Davis hid the gun.[4]

---

[2] *Id.*

[3] Gov't *In Limine* Mem. [DI 156], at 2-3.

[4] *Id.*

3

*Alleged Witness Intimidation*

Davis remained at large for many months after the King murder. During that time, the government alleges, Davis threatened a potential witness ("CW #2") and a witness's sister. CW #2 claims that Davis, on the night of the murder, told him that "he would be killed if he said anything to anyone about that night."[5] He claims also that Davis threatened him again, in March 2005, telling him, in substance, that "[t]he streets are really hot, the Feds are watching. If I ever end up in jail because of you, I'm going to kill you. Remember that."[6]

Ramos was arrested in April 2005 after he sold the gun used in the King murder to an undercover ATF agent.[7] The government claims that Davis and another man ("CW #1") approached Ramos's sister soon after Ramos's arrest. Davis allegedly grabbed her hair and threatened to kill members of her family if Ramos "snitched."[8] That same day, Davis reportedly told CW #1 that he planned to carry out this threat if Ramos cooperated with law enforcement.[9]

---

[5] Salvatore Aff. [DI 161] ¶ 3(a).

[6] *Id.* ¶ 3(b).

[7] *Id.* ¶ 3(a); Gov't *In Limine* Mem., at 3-4.

[8] Salvatore Aff. ¶¶ 3(a); 4.

[9] *Id.* ¶ 3(a).

*Pretrial Incarceration*

Davis was arrested on August 17, 2005 on a one-count indictment that charged him with distribution and possession with intent to distribute 3.6 grams of crack cocaine.[10] He has been in custody ever since. During that period, he has been disciplined for assaulting, fighting with, or threatening other inmates, for refusing to obey orders, and for insolence to staff members.[11]

While the cocaine charge was pending, Davis was indicted in this case on November 5, 2005.[12]

On November 29, 2007, Davis and CW #1 were put in the same cell prior to a court appearance. According to CW #1, Davis told him, in substance, that "anyone who testifies against us is gonna die." CW #1 interpreted this as a threat intended to dissuade him from cooperating with the government.[13]

---

[10] *United States v. Davis*, 05 Cr. 694, DI 1. He was found guilty after a jury trial before Judge Marrero and was sentenced principally to a term of imprisonment of 63 months. 05 Cr. 694, DI 58.

[11] Randazzo Aff. [DI 114], at ¶ 4 (describing five occasions on which Davis was disciplined for assaulting, fighting, or threatening other inmates and two occasions on which he was disciplined for refusing to obey orders or insolence to staff members).

[12] The interval since the initial indictment has been occasioned by the fact that Davis and two defendants added on superseding indictments were charged with offenses potentially punishable by death. This resulted in lengthy delays during Justice Department consideration of whether to seek the death penalty.

[13] Salvatore Aff. ¶ 3(b).

*The Assault at the Metropolitan Correctional Center ("MCC")*

On January 11, 2008, Davis was in the MCC and was brought to meet with his attorneys. Just prior to entering the conference room, he pulled out a "sharpened piece of metal that had been fashioned into a knife-like weapon or 'shank'" and stabbed the officer repeatedly.[14] The Court has viewed the surveillance video[15] of the attack, which lasted nearly a minute and continued as five guards attempt to subdue and disarm Davis.[16] This incident is the subject of a separate indictment charging Davis with attempted murder of a federal official, assault on a federal official, and possession of a weapon in prison.[17]

*Subsequent Events*

On at least two occasions since his attack on the officer at the MCC, Davis refused to leave his cell to appear in court.[18] His appearance was secured only after the Court issued an order authorizing the Marshals Service and the Bureau of Prisons "to use such force as is reasonably necessary to bring the defendant to court . . . ."[19]

---

[14] Gov't Mem [DI 114], at 2.

[15] The Court uses the term "video" in its colloquial rather than technical sense. The imaging of the incident may have been captured and recorded by digital or other technology.

[16] Randazzo Aff. Ex. A.; Duncan Aff. [DI 158], at ¶ 3.

[17] That indictment is before Judge Batts. *United States v. Davis*, 08 Cr. 76 (DAB).

[18] The Court was informed that Davis refused to leave his cell willingly for conferences on February 14 and April 16, 2008.

[19] Order, Apr. 16, 2008 [DI 149]. A similar order was issued on February 14, 2008.

6

*The Government's Motion*

Shortly after the attack at the MCC, the government moved to restrain the defendant with leg shackles during trial.[20] It submitted (1) an affirmation of FBI Special Agent Jason Randazzo,[21] which summarized Davis's disciplinary record and attached a copy of the surveillance "video" of the attack, (2) a letter from Supervisory Deputy United States Marshal Caitlin Duncan,[22] which set forth the Marshals Service's preliminary position on restraints, and (3) a brochure describing a stun-belt restraining device.[23] The government later supplemented this submission with an affirmation of Ms. Duncan setting forth the Marshals Service's final position on restraints.[24]

At a status conference on February 14, 2008, the Court heard some argument on the motion and heard views on whether an evidentiary hearing would be necessary.[25] On February 27, 2008, it held an evidentiary hearing. The government relied on its written submissions,[26] and the defendant declined the opportunity to cross-examine Randazzo and Duncan.[27] The defendant asked

---

[20] DI 113.

[21] DI 114 Ex. A.

[22] DI 114 Ex. B.

[23] DI 114 Ex. C.

[24] DI 158.

[25] Tr. Feb. 14, 2008, at 3:5-7; 4:17-12:15.

[26] Tr. Feb. 27, 2008, at 7:17-9:22.

[27] *Id.* at 8:1-9:10.

7

to submit a report from a psychiatrist[28] and for an evidentiary hearing related to the incident at the MCC[29] At the defendant's request, the Court adjourned the hearing to provide the defendant an additional opportunity to present testimony.[30]

The hearing resumed on March 6, 2008. The defendant chose not to testify[31] and submitted no testimony regarding the incident at the MCC.[32] Rather, the defendant adduced the testimony of David Barrett, an investigator hired by Davis's attorney.[33] The defendant later submitted to the Court a letter from Dr. Eric Goldsmith, a psychiatrist who evaluated Davis.[34] And the Court received a letter from Judge Marrero addressing Davis's conduct during his trial on the drug charge.[35]

The Court provided the parties a final opportunity to submit evidence on this motion during a conference on March 20, 2008.[36] Thereafter, the Court asked the government to (1)

---

[28] *Id.* at 9:8-10. That request was granted. *Id.* at 18:7-10.

[29] *Id.* at 10:1-19:13.

[30] *Id.* at 17:20-19:20.

[31] Tr., Mar. 6, 2008, at 25:13-26:7; 41:13-42:7.

[32] *Id.* at 30:13-15.

[33] *Id.* at 30:9-41:10.

[34] DI 155.

[35] DI 159.

[36] Tr., Mar. 20, 2008, at 6:12-8:17.

articulate its position on the necessity of hand restraints, (2) submit evidence of Davis's alleged threats to witnesses, (3) address how Davis could be restrained on the witness stand, should he chose to testify, and (4) arrange for a test-run of the proposed courtroom configuration and shackling.[37] The government addressed those issues during a conference on April 9, 2008, by letter on April 17, 2008,[38] and by affirmation of Special Agent Jay Salvatore.[39]

On April 16, 2008, the Court granted the governments motion.[40] This memorandum opinion sets out its findings and reasons.

*Discussion*

The Supreme Court and the Second Circuit have discussed the standard applicable to a court's decision to use physical restraints at trial that would be visible to the jury. In *Deck v. Missouri*, the Supreme Court explained that "[t]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial."[41] This is consistent with this circuit's pre-*Deck* approach to the use of visible restraints, articulated in *United States v.*

---

[37] DI 138; Tr. Apr. 9, 2008, at 22:12-25:11.

[38] DI 160 (describing the feasibility of restraining the defendant on the witness stand in a way that would not be visible to the jury).

[39] DI 161 (describing Davis's alleged threats to witnesses).

[40] Tr. Apr. 16, 2008, at 129:23-130:23.

[41] *Deck v. Missouri*, 544 U.S. 622, 629 (2005).

*Hameed* and *Davidson v. Riley*.[42] In those cases, the Second Circuit has "approved the use of restraints when the trial court independently exercises its discretion in ordering the restraints to maintain safety and security, imposes no greater restraints than are necessary and takes steps to minimize the prejudice flowing from the restraints."[43]

It is not clear that the standard applied to visible restraints is applicable also when a court considers restraints that will not be visible to the jury.[44] A less exacting standard might be appropriate in cases where the jury will not be aware of the restraints because the presumption of innocence would not be undermined in such circumstances.[45] In this case, the Court anticipates that the jury will not be aware of Davis's restraints, absent an effort by Davis to bring the restraints to its attention. Nonetheless, the Court will apply the standard articulated in *Deck* both because any error in doing so would favor the defendant and because satisfaction of the *Deck* standard at this

---

[42] *See Hameed v. Mann*, 57 F.3d 217, 222 (2d Cir. 1995); *Davidson v. Riley*, 44 F.3d 1118, 1122-23 (2d Cir. 1995).

[43] *DeLeon v. Strack*, 234 F.3d 84, 88 (2d Cir. 2000) (citing *Davidson* and *Hameed*).

[44] *Compare DeLeon*, 234 F.3d at 88-89 (suggesting that analysis of *Davidson* and *Hameed* would apply shackles would not be visible until defendant drew attention to them); *United States v. Baker*, 432 F.3d 1189, 1244 (11th Cir. 2005) (applying *Deck* where restraints were not visible to jury); *United States v. Waagner*, 104 Fed.Appx. 521, 526 (6th Cir. 2004) (considering same factors whether or not restraints were visible to jury); *with DeLeon*, 234 F.3d at 88 (different standard may apply if restraints are not visible to a jury); *United States v. Gray*, 254 F.Supp.2d 1, 3-4 (D.D.C. 2002) (cases addressing visible shackles provide "some guidance" in deciding whether non-visible restraint was appropriate).

[45] *See DeLeon*, 234 F.3d at 88 (noting that a different standard may be applicable if restraints are not visible to a jury); *United States v. Edelin*, 175 F.Supp.2d 1, 4 (D.D.C. 2001) (noting that "a lesser showing [may] be sufficient to justify the use of stun belts" because they are less obtrusive).

point could eliminate any need to reconsider the issue if Davis's behavior at trial warranted the addition of visible restraints.

Under *Deck* and Second Circuit precedent, the Court must make an individual determination of whether restraints are justified by a state interest specific to this trial, must "impose[] no greater restraints than are necessary," and must "minimize the prejudice flowing from the restraints."[46]

In determining whether a state interest specific to this trial requires that Davis be restrained, the Court considered the following factors: (1) the violent nature of the crime charged,[47] (2) the severity of the potential sentence,[48] (3) the defendant's disciplinary record and other conduct while in custody,[49] (4) allegations that the defendant threatened witnesses in this case,[50] and (5) the opinion of Marshals Service for this district.[51]

---

[46] *Davidson*, 44 F.3d at 1122-23; *see also Hameed*, 57 F.3d at 222.

[47] *See, e.g.*, *Baker*, 432 F.3d at 1244 (nature of the crime charged may be considered); *Edelin*, 175 F.Supp.2d at 6 (same); *Gray*, 254 F.Supp.2d at 4 (same).

[48] *See, e.g.*, *Edelin*, 175 F.Supp.2d at 6 (severity of potential sentence may be considered); *Gray*, 254 F.Supp.2d at 4 (same).

[49] *See, e.g.*, *United States v. Van Sach*, 458 F.3d 694, 699-700 (7th Cir. 2006) (noting that prison disciplinary records may be considered); *United States v. Mayes*, 158 F.3d 1215, 1225-26 (11th Cir. 1998) (same).

[50] *See, e.g.*, *Gray*, 254 F.Supp.2d at 4 (considering allegations that defendants threatened witnesses).

[51] *See, e.g.*, *Id.* (considering the Marshals Service's opinion).

Collectively, they persuaded the Court that Davis, absent restraint, would be a threat to the physical security of people in the courtroom and an escape risk and that these state interests specific to this trial justify restraints in this case.

First, Davis is charged in this case with exceptionally violent criminal conduct.[52] He is charged also on another indictment with attempted murder of a prison guard.

Second, Davis is facing the potential of a life sentence on this indictment as well as an additional stiff sentence on the indictment arising out of the attack at the MCC, all added to the 63 month sentence already imposed on the drug conviction. In such a circumstance, the severity of the potential sentence "may cause the defendant[] to overlook a potential additional sentence for crimes committed in the courtroom, including violent action against participants in the trial process."[53] The government's report that Davis has described himself as a "walking security breach" who has nothing to lose,[54] supports the Court's finding that he is unlikely to be influenced by the risk of additional sentences.

Third, the record reflects, and the Court finds, that Davis has been violent and insolent while in federal custody. The most notable example is Davis's attack on the federal officer

---

[52] Although the government does not seek the death penalty in this case, two of the charges against Davis are punishable by death.

[53] *Edelin*, 175 F.Supp.2d at 6; *see also Woods v. Thieret*, 5 F.3d 244, 248 n.7 (7th Cir.1993) ("[A] prisoner with . . . serving a long prison sentence is more likely to disrupt the courtroom or attempt an escape because he may mistakenly believe he has nothing to lose.").

[54] Gov't Mem [DI 114], at 3.

in the MCC.[55] Moreover, that incident is not the only example of Davis's violence and insolence. He has been disciplined on numerous occasions for assaulting, fighting, and threatening other inmates, refusing to obey orders, and insolence to staff members.[56] In addition, he has refused to leave his cell to attend court.

Fourth, there are allegations that Davis has threatened witnesses on several occasions.[57] The Court and government has taken steps to protect witnesses. For example, the Court has issued protective orders limiting the dissemination to Davis of contact and identification information for the government's witnesses.[58] And the government reports that it relocated Ramos's family shortly after Davis threatened Ramos's sister.[59]

Fifth, the Marshals Service "believe[s] that additional courtroom security is necessary to protect the Court, the lawyers, the jury and others in the courtroom, and to prevent any effort at

---

[55] Davis previously sought to explain the attack. Tr. Feb. 27, 2008, at 12:20-16:19. But his explanation is not credible and, even if it were, it would neither justify his actions nor materially alter the Court's assessment of the risk of his unrestrained presence in the courtroom.

[56] Randazzo Aff. ¶ 4.

[57] The Court has not taken testimony from those with personal knowledge of the threats. But the evidence appears to be reasonably reliable. Moreover, although Davis was given the opportunity, he neither took the stand at the hearing on the government's motion to deny the allegations nor sought to adduce any other evidence to undermine their reliability. In these circumstances, the Court is persuaded that it is appropriate to rely on the evidence of the threats. Nevertheless, the result would be the same here even if that evidence were disregarded entirely.

[58] *E.g.*, DI 93, 96, 123.

[59] Salvatore Aff. ¶ 3(a) n.2.

escape."[60] This recommendation is based on a review of Davis's attack at the MCC, his disciplinary record, and his refusal to appear in court willingly.[61] While the Court does not abdicate its independent responsibility to the Marshals Service,[62] it values Marshals Service's opinion, as it reflects experience with and knowledge of security in this courthouse and in cases of this nature.

In opposition to the government's motion, the defendant offered the testimony of David Barrett, an investigator hired by Davis's attorney, and a letter from Dr. Eric Goldsmith, a psychiatrist who evaluated Davis.[63] Mr. Barrett testified that he has had several contact visits with Davis and that Davis never misbehaved during those meetings. He testified also that, in his opinion, Davis is very interested in this case and would want to put his best foot forward during the trial.[64] Dr. Goldsmith advised the Court by letter that "there is no evidence of a psychiatric condition that would place Mr. Davis in a high risk category for violence in the courtroom" and that "it is [his] opinion, to a reasonable degree of psychiatric certainty that Raheen Davis can comport himself to appropriate behavior unshackled during court proceedings."[65] Further, the Court assumes, for

---

[60] Duncan Aff. ¶ 6.

[61] *See Id.* ¶¶ 3-6.

[62] *See Davidson*, 44 F.3d at 1125.

[63] The defendant had the opportunity, which he declined to take advantage of, to present testimony about the incident at the MCC. Tr. Mar. 6, 2008, at 30:13-15.

[64] *Id.* at 31:2-40:1.

[65] Letter from Dr. Eric Goldsmith, Mar. 13, 2008 (enclosed as an attachment to the Letter from Mitchell Dinnerstein, Mar. 19, 2008 [DI 155]).

purposes of this motion, "that [Davis] behaved himself in an exemplary fashion [before Judge Marrero]."[66]

The Court acknowledges that Davis has not been violent during prior court appearances and accepts that Davis, as Dr. Goldsmith said, *can* behave appropriately in a courtroom. The fact that he is capable of behaving properly, however, does not foreclose the possibility that the rage that he has exhibited so graphically or his perception of his self-interest will result in violence in the courtroom.[67] Moreover, there are reasons to doubt that Davis's prior courtroom behavior is predictive of the future. Davis's disdain for federal officers and court proceedings is evident in his recent attack of a federal officer and refusals to appear willingly in court. Furthermore, in contrast to prior court appearances, this trial will put Davis in close proximity to the witnesses he is accused of threatening, providing a rare opportunity to act upon the threats.

Based on (1) the violent nature of the crime charged, (2) the likelihood that Davis will not be deterred by the threat of additional sentences, (3) Davis's disciplinary record and conduct while in custody, including his attack on a guard at the MCC, (4) allegations that Davis has threatened witnesses, and (5) the recommendation of the Marshals Service, the Court finds that Davis poses a specific threat to courtroom security, such that additional security measures, including shackles, are justified. The risk simply is too high to ignore.

---

[66] Tr., Mar. 20, 2008, at 8:15-16; *see also* Letter from Mitchell Dinnerstein, Mar. 19, 2008, at 1; Letter from Judge Victor Marrero, Apr. 1, 2008 [DI 159].

[67] *See, e.g.*, *United States v. Honken*, 378 F.Supp.2d 1010, 1034-35 (N.D.Iowa, 2004); *Edelin*, 175 F.Supp.2d at 3; *United States v. Durham*, 219 F.Supp.2d 1234, 1242 (N.D.Fla. 2002).

The sudden and violent nature of Davis's attack on a federal guard in the MCC demonstrates the need for immediate deterrence and restraint. Additional personnel would not be sufficient to serve this purpose. Moreover, the Marshals Service – with experience in providing security to this courthouse – considered alternative measures to provide security and concluded that leg restraints are necessary in this case.[68] Other than suggesting that he not be restrained, the defendant has made no effort to suggest an alternative, lesser restraint. Accordingly, the Court finds that leg shackles are the minimum restraint necessary in these circumstances.

The Court is not persuaded by defendant's claim that he would be unable to participate in his defense if he were restrained. On this point, the Court considers its own observations of the defendant during the eight conferences since January 22, 2008.[69] Davis participated actively in the proceedings during each and was able to consult with his attorney while wearing both leg and hand shackles.[70]

Further, the Court finds that the planned precautions, including wrapping the leg shackles to muffle any sound and draping counsels' tables with a curtain, are sufficient to conceal the restraints from the jury, at least absent efforts by Davis to make them apparent. Despite Davis's protestations to the contrary, he does not identify any specific ways in which the precautions are

---

[68] *See* Duncan Aff. ¶ 6.

[69] *See Durham*, 219 F.Supp.2d at 1241 (relying on Court's own observations of defendant's participation in trial).

[70] To the extent that Mr. Barrett suggested otherwise, Tr., Mar. 8, 2008, at 39:22-24, the Court does not find that testimony persuasive.

insufficient. As trial proceeds, the Court will continue to make every effort to avoid or minimize any prejudice attributable to restraining Davis.

*Conclusion*

For the foregoing reasons, the defendant shall be shackled in leg irons and the leg irons shall be secured to the counsel table. When the jury is not present, the defendant shall also be handcuffed and the handcuffs shall be secured to a belly chain. In order to minimize any risk of prejudice to defendant, the shackles shall be wrapped to prevent noise, both the government's and the defense counsel tables shall be draped with a curtain, and all trial participants shall remain seated when the jury enters and exits. Further, the defendant shall be permitted to use only a flexible pen provided by the Marshals Service. Any heavy objects near Davis shall be secured to the counsel table.

SO ORDERED.

Dated: April 24, 2008

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)